UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROSALIE SHEEHAN-VEAL,**
on behalf of herself and
on behalf of all others
similarly-situated,

    Plaintiff,

v.                          CASE NO.:  8:22-cv-0255-SCB-MRM

**BETTER MORTGAGE
CORPORATION d/b/a
BETTER.COM,**

    Defendant.
_____/

### JOINT MOTION FOR APPROVAL OF SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

The Parties, through their undersigned counsel, jointly move for Court approval of the mutually agreed-upon terms of settlement in this action. In further support hereof, the Parties state as follows:

### SUPPORTING FACTS AND PROCEDURAL OVERVIEW

1. Plaintiff was employed by Better as a mortgage underwriter from October 2020 to December 2021.

2. On January 31, 2022, Plaintiff filed a Complaint against Better in the United States District Court, Middle District of Florida (the "Court"), Case No. 8:22-cv-00255-SCB-MRM, in which she alleged that Better

misclassified her and a collective of Florida-based mortgage underwriters as exempt from overtime pay requirements under the Fair Labor Standards Act ("FLSA") (the "Lawsuit").

3. On February 1, 2022, the Court entered its FLSA Scheduling Order. (Doc. 5).

4. On February 21, 2022, Plaintiff filed her responses to the Court's FLSA Interrogatories. (Doc. 7). In her responses, Plaintiff claimed she was owed $16,227.00 in overtime wages, excluding liquidated damages.

5. In the interim, Plaintiff's counsel was contacted by counsel for Better, and the two sides agreed to early mediation. The Parties then moved the Court to stay this entire case pending mediation. (Doc. 9). The Court granted that motion on April 18, 2022, staying this action until August 5, 2022. (Doc. 10).

6. Soon thereafter, Plaintiff's counsel was contacted by two other law firms and was informed that a nationwide collective action for unpaid overtime wages had been previously filed against Better in California.

7. More specifically, on or about September 18, 2020, another former Better mortgage underwriter, Lorenzo Dominguez, filed a still-pending putative class and collective action against Better in the United States District Court, Central District of California, Case No. 8:20-cv-01784-JLS-KES ("*Dominguez*"), in which he alleged that Better misclassified all

mortgage underwriters as exempt from overtime pay requirements under the FLSA and seeks to represent a collective of all mortgage underwriters employed by Better in the United States since September 18, 2017, which would include Plaintiff.

8. *Dominguez* was originally scheduled for mediation in October of 2022. Accordingly, the Parties sought and received multiple stays from this Honorable Court while they attempted to resolve their differences through mediation. (*See* Docs. 12-15). Ultimately, the mediation of *Dominguez* was unsuccessful. Nonetheless, counsel for the Parties in this matter continued discussing settlement and, ultimately, reached a fair and reasonable agreement to fully resolve this action (subject to this Court's approval).

9. Specifically, as set forth in the Parties' Settlement and General Release Agreement (the "Settlement" or "Agreement"), attached hereto as Exhibit A, Better has agreed to pay Plaintiff a total of $14,000, which represents $7,000 in back wages and $7,000 in liquidated damages. Importantly, the gross amount of $14,000 recovered by Plaintiff represents nearly all of the original amount of overtime damages Plaintiff originally sought in her responses to the Court's interrogatories. (*See* Doc. 7).

10. Better denies Plaintiff was misclassified as exempt and denies owing Plaintiff any money whatsoever.

11. However, to avoid the risks and unknowns, as well as the costs of protracted litigation, the Parties desire to fully and finally resolve this action with prejudice, as to all counts, claims, and parties. After a full review of the facts and information, the Parties, who have been represented by counsel at all times, agree that the negotiated terms of the Settlement represent a fair, reasonable, and just compromise of disputed issues.

## **MEMORANDUM OF LAW**

There are two ways in which claims for overtime compensation under the FLSA may be compromised or released by an employee. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The first, which has no application in the instant case, permits resolution of claims under the supervision of the United States Department of Labor. *Id*. The second, which does apply in the instant case, permits judicial approval of disputed claims on terms that are fair and reasonable:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are

> actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354. When asked to review and approve the terms of a settlement under the FLSA, there is a "strong presumption" in favor of approval. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005).

### I. The Settlement.

Under the terms of the Agreement, Better will pay Plaintiff $7,000 for alleged unpaid overtime wages and an additional $7,000 for alleged liquidated damages. These amounts fairly balance the monetary amounts at issue in the case with the risks inherent in proceeding with litigation rather than settling.

The Settlement also provides that Better will pay Plaintiff's counsel $10,000.00 in fees and costs. In accordance with *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), Plaintiff's fees and costs were agreed upon separately and without regard to the amount paid to Plaintiff.

### II. A "Bona Fide" Dispute Exists.

"*Lynn's Food* permits approval of a compromise resolving a 'bona fide dispute over FLSA provisions.'" *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (quoting *Lynn's Food*, 679 F.2d at 1350). Parties

5

requesting review of a FLSA settlement "must provide enough information for the court to examine the bona fides of the dispute." *Id.*

Here, Plaintiff was hired by Better as a mortgage underwriter. In that role, her primary duties included reviewing a borrower's credit history for loan applications, ensuring all documents were submitted correctly based on underwriting requirements, and working closely with loan processors and closers to get the file to closing. Plaintiff contends that, as a result of her duties, she is not "exempt" under the FLSA from overtime pay.

Better, on the other hand, counters that Plaintiff was, in fact, properly classified as exempt from overtime under the FLSA. Additionally, Better contends Plaintiff was properly paid for all hours worked.

The Parties agree that a bona fide dispute exists as to whether Plaintiff was properly classified as exempt from the FLSA's overtime provisions, and further agree that bona fide disputes pertaining to the admissibility of various evidence exist.

### III. All Factors Relevant to the "Fairness" of the Settlement Weigh in Favor of Approval.

Although *Lynn's Food* determined that the settlements at issue in that case were unfair, it did not specify criteria for evaluating the fairness of proposed compromises under different circumstances. *See Dees*, 706 F. Supp. 2d at 1240. This Court has noted that the factors for evaluating the

"fairness" of a class action settlement should be applied when evaluating the "fairness" of a FLSA settlement. *Id.* at 1241. Those factors include:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel.

*Id.* at 1241 (citations omitted). Here, all factors weigh in favor of approval of the Settlement.

### a. *There is no fraud or collusion behind the Settlement.*

Courts find no fraud or collusion where both parties were represented by counsel and the amount to be paid to plaintiffs seemed fair. *See Bonilla v. Shiner's Car Wash*, No. 6:12-cv-1649-ORL-22TBS, 2014 U.S. Dist. LEXIS 66297, at *5 (M.D. Fla. 2014). Here, each party was independently represented by counsel with substantial experience litigating FLSA claims. As evidenced by the extensive settlement record in this case, counsel advocated on behalf of their respective clients vigorously. There was no fraud or collusion behind the Settlement.

### b. *The complexity, expense, and length of future litigation militate in favor of the Settlement.*

Litigating, rather than settling this matter, would require both sides to incur significant additional costs and fees. In addition, proceeding with

7

litigation brings great risk to both Parties. If the Court found her exempt from overtime pay under the FLSA, for example, Plaintiff would recover nothing. On the other hand, if Plaintiff were to prevail, Better would receive an adverse judgment and be ordered to pay any damages and fees. The losing side at trial would undoubtedly appeal the case, further lengthening and adding to the expense of the litigation. It is thus in the best interests of all Parties to settle, rather than litigate, this matter.

      c.    *<u>The stage of the litigation weighs in favor of approval of the Settlement.</u>*

While this case settled fairly early in the litigation, it only did so because both sides were fully-informed of the other side's arguments and, through the assistance of a mediator, as to their own side's strengths and weaknesses. This factor weighs in favor of approval.

      d.    *<u>Plaintiff's probability of success on the merits is uncertain.</u>*

As discussed above, Plaintiff's probability of success on the merits is not a certainty. FLSA exemption cases, like this, can be highly fact specific, making both summary judgment and trial a serious risk for Plaintiff. Considering she recovered nearly all of the damages she originally sought, the Settlement is an excellent outcome for Plaintiff and should be approved.

    e. *The Parties weighed the opinions of counsel in deciding whether to settle.*

The Parties agree they weighed the opinions of their respective counsel in deciding whether to settle.

## IV. The Attorneys' Fees to be Paid as Part of the Settlement are Fair and Reasonable.

This Court has held that a settlement must award the plaintiff's counsel a reasonable fee. *Dees*, 706 F. Supp. at 1243. The Court need not, however, scrutinize the amount of a plaintiff's attorneys' fee when it was agreed upon separately and without regard to the amount paid to the plaintiff, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney. *See Bonetti*, 715 F. Supp. 2d at 1228; *see also Dees*, 706 F. Supp. 2d at 1243 (quoting *Bonetti*). Such is the case here. The fee to be paid to Plaintiff's counsel under the Settlement, $10,000, was negotiated separately from and without regard to the amount paid to Plaintiff. The Settlement is reasonable on its face, including the fee amount. As such, the Court should approve the Settlement.

## CONCLUSION

The Court should approve the settlement of this action. The sums paid to Plaintiff under the Settlement fairly balances the amount Plaintiff would seek at trial against the risk that Plaintiff might recover nothing if the

case were to proceed. Additionally, Plaintiff's counsel will receive a reasonable fee in connection with the Settlement. All factors germane to the Court's consideration of the fairness of the Settlement weigh in favor of approval.

**WHEREFORE**, the Parties respectfully request that this Honorable Court (i) GRANT this Motion; (ii) APPROVE the Settlement; and (iii) ENTER an Order dismissing this case with prejudice.

DATED this 8th day of March, 2023.

Respectfully submitted,

| | |
|---|---|
| */s/Brandon J. Hill* | */s/ Samuel J. Dubbin* |
| **LUIS A. CABASSA** | **ADAM J. KARR** (*pro hac vice forthcoming*) |
| Florida Bar Number: 053643 | |
| Direct No.: 813-379-2565 | **SUSANNAH K. HOWARD** (*pro hac vice forthcoming*) |
| **BRANDON J. HILL** | |
| Florida Bar Number: 37061 | **O'MELVENY & MYERS LLP** |
| Direct No.: 813-337-7992 | 400 South Hope Street |
| **WENZEL FENTON CABASSA, P.A.** | 18th Floor |
| 1110 North Florida Ave., Suite 300 | Los Angeles, CA 90071 |
| Tampa, Florida 33602 | O: +1-213-430-6516 |
| Main No.: 813-224-0431 | C: +1-213-268-7190 |
| Facsimile: 813-229-8712 | akarr@omm.com |
| Email: lcabassa@wfclaw.com | showard@omm.com |
| Email: bhill@wfclaw.com | |
| *Attorneys for Plaintiff* | and |
| | **SAMUEL J. DUBBIN, P.A.** |
| | Florida Bar No. 328189 |
| | **DUBBIN & KRAVETZ, LLP** |
| | 1200 Anastasia Ave., Ste 300 |
| | Coral Gables FL 33134 |
| | (305) 371-4700 |

                                               (305) 815-8060 (cell)
                                            sdubbin@dubbinkravetz.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 8th day of March, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of the electronic filing to all counsel of record.

                                      */s/Brandon J. Hill*
                                      **BRANDON J. HILL**

# EXHIBIT A

# SETTLEMENT AND GENERAL RELEASE AGREEMENT

This Settlement and General Release Agreement (the "Settlement" or the "Agreement") is entered into by and between Rosalie Sheehan-Veal ("Plaintiff"), on the one hand, and Better Mortgage Corporation ("Better"), on the other hand. Plaintiff and Better are collectively referred to herein as the "Parties," and each a "Party."

**WHEREAS**, Plaintiff was employed by Better from October 2020 to December 2021;

**WHEREAS**, on or about January 31, 2022, Plaintiff filed a Complaint against Better in the United States District Court, Middle District of Florida (the "Court"), Case No. 8:22-cv-00255-SCB-MRM, in which she alleged that Better misclassified her and a collective of Florida-based mortgage underwriters as exempt from overtime pay requirements under the Fair Labor Standards Act ("FLSA") (the "Lawsuit");

**WHEREAS**, on or about September 18, 2020, another former Better mortgage underwriter, Lorenzo Dominguez, filed a still-pending putative class and collective action against Better in the United States District Court, Central District of California, Case No. 8:20-cv-01784-JLS-KES (the "Dominguez Lawsuit"), in which he alleged that Better misclassified all mortgage underwriters as exempt from overtime pay requirements under the FLSA and seeks to represent a collective of all mortgage underwriters employed by Better in the United States since September 18, 2017, which would include Plaintiff;

**WHEREAS**, Better denies any liability with respect to the allegations asserted by Plaintiff in the Lawsuit, with respect to the allegations in the Dominguez Lawsuit, or that it has engaged in any wrongdoing towards Plaintiff whatsoever;

**WHEREAS**, the Parties conducted extensive discussions in an effort to resolve the Lawsuit; and

**WHEREAS**, the Parties desire to resolve and settle any and all pending and potential actions and issues that were or could have been asserted between them, including those related to the Lawsuit or their relationship or otherwise and any other potential actions or issues between Plaintiff and Better, and to do so without the further expenditure of time or expense of litigation and, for that reason, have entered into this Agreement.

**NOW THEREFORE**, in consideration of the covenants, promises, releases and waivers set forth in this Agreement, the Parties each agree to a full and complete settlement of the Lawsuit on the following terms, conditions and releases:

1. **Effective Date**: This Agreement will become effective on the date the Parties exchange a fully-executed copy of this Agreement signed by the Parties (the "Effective Date"), provided that Plaintiff signs and returns this Agreement on or before [5 business days after receiving final version of Agreement].

2. **Consideration**:

    a. Within 30 calendar days following the latter of (1) the Effective Date of this Agreement or (2) the date the Court issues an order approving this Settlement and the time to appeal that order has lapsed, better will provide Plaintiff with a settlement payment in the total amount of Twenty Four Thousand Dollars ($24,000.00) (the "Settlement Payment") as follows:

        i. as compensation for alleged unpaid wages, the gross sum of Seven Thousand Dollars ($7,000.00), less applicable payroll/tax withholdings, made payable to "Rosalie Sheehan-Veal," said amount to be reported by Better on an IRS Form W-2 to Plaintiff;

        ii. as compensation for alleged liquidated damages, penalties and interest, the gross sum of Seven Thousand Dollars ($7,000.00), made payable to "Rosalie Sheehan-Veal," said amount to be reported by Better on an IRS Form 1099-MISC to Plaintiff; and

        iii. as compensation for alleged attorneys' fees and costs, including, but not limited to, reimbursement for the cost of the Lawsuit, the sum of Ten Thousand Dollars ($10,000.00), made payable to "Wenzel Fenton Cabassa, P.A.," said amount to be reported by Better on IRS Form 1099-MISC to Plaintiff and her counsel. The Parties agree that Plaintiff's attorneys' fees and costs were agreed upon separately and without regard to the amount paid to the Plaintiff.

    b. Plaintiff acknowledges and agrees that the Settlement Payment represents a payment and benefit that she would not otherwise be entitled to receive without entering into this Agreement and constitutes full and agreed consideration of the releases, promises and other terms and conditions of this Agreement.

3. **Releases and Waivers**:

    a. Release by Plaintiff. Except for those obligations created by or arising out of this Agreement, Plaintiff, on her own behalf and on behalf of her descendants, dependents, marital community, heirs, executors, administrators, assigns and successors, and each of them, does hereby covenant never to sue and acknowledges complete satisfaction of and hereby fully and forever releases, absolves an discharges Better and any of its past, present, or future units, component entities, owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, direct or indirect parent companies, direct or indirect affiliate companies, divisions, direct or indirect subsidiaries (whether or not wholly owned), policyholders, benefit plans, including profit sharing, pension, health, savings, and any other employee benefit plans of any nature, the plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including but not limited to any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Releasees") with respect to and from any and all claims, demands, rights, liens, agreements, contracts, covenants, actions, suits, charges, complaints, grievances, wages, employment benefits, obligations, debts, litigation, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which Plaintiff has or might have, known or unknown, suspected or unsuspected, matured or unmatured, fixed or contingent, apparent or concealed,

which Plaintiff now owns or holds or has at any time heretofore owned or held as against Releasees, or any of them (collectively "Claims"), including but not limited to: (i) any and all Claims arising out of or concerning Plaintiff's employment relationship with any of the Releasees and the termination of that employment; (ii) any and all Claims asserted or that could have been asserted in the Lawsuit; (iii) any and all Claims for discrimination, harassment, retaliation or any other violation or Claim arising under any local, state or federal law, regulation, or ordinance (including, but not limited to, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment Retraining and Notification Act, the Employee Retirement Income Security Act, the Occupational Safety and Health Act, the False Claims Act, the Florida Civil Rights Act, the Florida Minimum Wage Act, the Florida Whistleblower Act, Florida's general labor laws (Fla. Stat. §§ 448.01 to 448.09), and retaliation provisions under the Florida Workers' Compensation Act); (iv) any and all Claims for wrongful termination, failure to engage in the interactive process, failure to provide accommodations, breach of express and/or implied-in-fact contract, breach of the covenant of good faith and fair dealing, unpaid wages, violation of public policy, intentional and/or negligent infliction of emotional distress, defamation, invasion of privacy, fraud and/or negligent misrepresentation, negligent supervision and/or retention, intentional and/or negligent interference with contractual relations and/or prospective economic advantage, and other common law torts; (v) any and all Claims for severance pay or benefits, bonus, commission and/or incentive pay, equity compensation, retention bonus, sick leave, sick pay, holiday pay, vacation pay, life insurance, health and medical insurance or any other fringe benefit, or disability; (vi) any and all Claims for penalties, attorneys' fees or costs; and/or (vii) any and all Claims arising out of any other transactions, occurrences, acts, or omissions or any loss, damage or injury whatsoever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of Releasees, or any of them, committed or omitted on or prior to the date of this Agreement. Nothing in the foregoing release is intended to relieve Releasees of any claim that may not be released as a matter of applicable law.

      b.    <u>Waiver of Unknown Claims</u>.  It is a condition of this Agreement and is the intention of Plaintiff in executing this Agreement that the general release in Section 3.a. be extended to each and every Claim, demand and cause of action hereinabove specified, including but not limited to claims that are unknown or unsuspected by Plaintiff.  In so doing, Plaintiff expressly acknowledges that she is knowingly waiving rights that she may have under any applicable state, federal or local law that restricts the right of a person to waive unknown or unsuspected claims, including but not limited to California Civil Code section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiff acknowledges that she may later discover claims or facts in addition to or different from those which Plaintiff now knows or believes to exist with respect to the subject

3

matter of this Agreement and which, if known or suspected at the time of executing this Agreement, may have materially affected this Settlement. Nevertheless, Plaintiff hereby waives any right, claim, or cause of action that might arise as a result of such different or additional claims or facts.

4. **Approval of Settlement**: As a condition of this Agreement, the Parties will jointly file with the Court a motion for approval of the Settlement (the "Motion"). If there is a hearing on the Motion, the Parties will jointly appear, supporting the granting of the Motion. Should the Court decline to approve all material aspects of the Settlement (including but not limited to the scope of the release granted by Plaintiff), or order material changes to the Settlement to which the Parties do not agree, the Parties will work together in good faith to address any concerns raised by the Court and propose a revised Settlement for the Court's approval.

5. **Denial of Liability**: While this Agreement resolves all issues that Plaintiff may have with Better, as well as any future effects of any acts or omissions, it does not constitute an admission by Better of any violation of any federal, state or local law, ordinance or regulation or of any violation of Better's policies or procedures or of any liability or wrongdoing whatsoever. Neither this Agreement nor anything in this Agreement will be construed to be, or will be admissible in any proceeding as, evidence of liability or wrongdoing by Better. This Agreement may be introduced, however, in any proceeding to enforce the Agreement.

6. **Warranty Regarding Non-Assignment**: Plaintiff warrants and represents that she has not assigned or transferred to any person not a party to or intended beneficiary of this Agreement any released matter or any part or portion thereof, and that she will defend, indemnify and hold harmless Better (and all other Releasees) from and against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation is commenced) based on or in connection with or arising out of any such assignment or transfer made, purported or claimed.

7. **Acknowledgment of Wage Payments and Expenses**: Plaintiff warrants, represents, and agrees that (a) this Agreement resolves any and all disputes between the Parties regarding any wages and/or other compensation that Plaintiff allegedly earned or was entitled to receive during her employment with Better or any of the Releasees; (b) Plaintiff has been paid all wages, salary, bonuses, incentive compensation and any other benefits and compensation earned by Plaintiff during her employment with Better and any other Releasees; (c) other than the Settlement Payment, Plaintiff will not be entitled to any further wages, salary, bonuses, incentive compensation or any other benefits and compensation; and (d) Plaintiff has been fully reimbursed for all legitimate business expenses that she incurred during her relationship with Better and any of the Releasees.

8. **Warranty Regarding Taxes**: Plaintiff agrees that she will be exclusively liable for the payment of all federal and state taxes which may be due as the result of the consideration received from the settlement of disputed claims as set forth in this Agreement, and Plaintiff hereby represents that she will make payments on such taxes at the time and in the amount required of her. In addition, Plaintiff hereby agrees fully to defend, indemnify and hold harmless Releasees, and each of them, from payment of taxes, withholdings, interest and/or penalties that are required of them by any government agency at any time as the result of payment of the consideration set

forth in this Agreement. Plaintiff represents that she has not relied upon any advice from Better and/or its attorneys as to the necessity for withholding or the taxability of such payment, whether pursuant to federal, state or local income tax statutes or otherwise.

9. **Warranty Of No Other Actions Pending**: Plaintiff warrants and represents that, other than the Lawsuit, which, pursuant to Section 4, will be dismissed with prejudice following approval of the Settlement, no charge, complaint, action, application, petition, or grievance brought by Plaintiff or on her behalf regarding any of the matters released in this Agreement is currently open or presently exists against Better and/or any other Releasee in any forum or form. In addition, Plaintiff promises to opt out of any class or action that she is aware of and to take such other steps as she has the power to take to disassociate herself from any class or action seeking relief against Better and/or any other Releasee regarding any of the matters released in this Agreement.

10. **Nondisparagement**: Plaintiff agrees that she will not make any disparaging remarks, or any remarks that could reasonably be construed as disparaging, whether orally or in writing, regarding Better and/or any other Releasee, in any manner that is intended to be harmful to them or their business, business reputation or personal reputation, including but not limited to statements to the media, former and present employees, consultants or customers of Better. Nothing in this Section is intended to prohibit Plaintiff from testifying or responding truthfully in response to any court order, arbitral order, subpoena or government investigation, provided that Plaintiff: (i) provides written notice to Better within 72 hours of receiving any such order, subpoena or request for information from any governmental agency; and (ii) cooperates with Better to the extent it elects to object to such order, subpoena, or governmental investigation.

11. **Integration Clause**: This Agreement constitutes and contains the entire agreement and final understanding concerning the subject matters addressed in this Agreement. It is intended by the Parties as a complete and exclusive statement of the terms of their agreement. It supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matters addressed in this Agreement. Any representation, promise or agreement not specifically included in this Agreement will not be binding upon or enforceable against either Party. This is a fully integrated agreement.

12. **Severability**: If any term or provision of this Agreement or the application thereof is held to be invalid or unenforceable, the invalidity or unenforceability will not affect any other terms or provisions or applications of this Agreement which can be given effect without the invalid terms or provisions or application, and to this end the terms and provisions of this Agreement are declared to be severable. In other words, if any term or provision of this Agreement is held to be invalid or unenforceable, then the remaining terms and provisions of this Agreement will continue to be valid and will be performed, construed, and enforced to the fullest extent permitted by law.

13. **No Attorneys' Fees or Costs**: The Parties acknowledge and agree that, except as expressly provided herein, each Party will bear their own costs and attorneys' fees of all kinds, including those incurred in connection with the Lawsuit or the preparation of this Agreement or its enforcement.

14. **Governing Law**: This Agreement will be deemed to have been executed and delivered within the State of Florida, and the rights and obligations of the Parties under this Agreement will be construed and enforced in accordance with, and governed by, the laws of the State of Florida without regard to principles of conflict of laws.

15. **Non-Waiver**: No waiver of any breach of any term or provision of this Agreement will be construed to be, or will be, a waiver of any other breach of this Agreement. No waiver will be binding unless in writing and signed by the Party waiving the breach.

16. **Representation**: In entering into this Agreement, the Parties warrant and represent that they have completely read and fully understand the terms and consequences of this Agreement, that they have been given the opportunity to consult with legal counsel of their own choosing regarding this Agreement. Accordingly, the Parties each warrant and represent that the terms of this Agreement are fully understood and freely and voluntarily accepted by them.

17. **Cooperation**: Each Party has cooperated in the drafting of this Agreement. Hence, in any construction to be made of this Agreement, the same will not be construed against any Party on the basis that the Party was the drafter. Additionally, the Parties agree to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force to the basic terms and intent of this Agreement and which are not inconsistent with its terms.

18. **Counterparts**: This Agreement may be executed in counterparts, and each counterpart, when executed, will have the same effect as a signed original. Photographic copies of such signed counterparts may be used in lieu of the originals for any purpose.

**(ALL SIGNATURES ON PAGE 8)**

I HAVE READ THE FOREGOING AGREEMENT AND I ACCEPT AND AGREE TO THE PROVISIONS IT CONTAINS AND HEREBY EXECUTE IT VOLUNTARILY WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

Dated: Feb 24, 2023                     ROSALIE SHEEHAN-VEAL

                                        */s/ Rosalie Sheehan-Veal*

Dated: February 28, 2023                BETTER MORTGAGE CORPORATION

                                        */s/ Levy Leatherman*
                                        Levy Leatherman
                                        Assistant General Counsel, Employee Relations

7