# EXHIBIT A

## SETTLEMENT AND GENERAL RELEASE AGREEMENT

This Settlement and General Release Agreement (the "Settlement" or the "Agreement") is entered into by and between Rosalie Sheehan-Veal ("Plaintiff"), on the one hand, and Better Mortgage Corporation ("Better"), on the other hand. Plaintiff and Better are collectively referred to herein as the "Parties," and each a "Party."

**WHEREAS**, Plaintiff was employed by Better from October 2020 to December 2021;

**WHEREAS**, on or about January 31, 2022, Plaintiff filed a Complaint against Better in the United States District Court, Middle District of Florida (the "Court"), Case No. 8:22-cv-00255-SCB-MRM, in which she alleged that Better misclassified her and a collective of Florida-based mortgage underwriters as exempt from overtime pay requirements under the Fair Labor Standards Act ("FLSA") (the "Lawsuit");

**WHEREAS**, on or about September 18, 2020, another former Better mortgage underwriter, Lorenzo Dominguez, filed a still-pending putative class and collective action against Better in the United States District Court, Central District of California, Case No. 8:20-cv-01784-JLS-KES (the "Dominguez Lawsuit"), in which he alleged that Better misclassified all mortgage underwriters as exempt from overtime pay requirements under the FLSA and seeks to represent a collective of all mortgage underwriters employed by Better in the United States since September 18, 2017, which would include Plaintiff;

**WHEREAS**, Better denies any liability with respect to the allegations asserted by Plaintiff in the Lawsuit, with respect to the allegations in the Dominguez Lawsuit, or that it has engaged in any wrongdoing towards Plaintiff whatsoever;

**WHEREAS**, the Parties conducted extensive discussions in an effort to resolve the Lawsuit; and

**WHEREAS**, the Parties desire to resolve and settle any and all pending and potential actions and issues that were or could have been asserted between them, including those related to the Lawsuit or their relationship or otherwise and any other potential actions or issues between Plaintiff and Better, and to do so without the further expenditure of time or expense of litigation and, for that reason, have entered into this Agreement.

**NOW THEREFORE**, in consideration of the covenants, promises, releases and waivers set forth in this Agreement, the Parties each agree to a full and complete settlement of the Lawsuit on the following terms, conditions and releases:

1. **Effective Date**: This Agreement will become effective on the date the Parties exchange a fully-executed copy of this Agreement signed by the Parties (the "Effective Date"), provided that Plaintiff signs and returns this Agreement on or before [5 business days after receiving final version of Agreement].

2. **Consideration**:

    a. Within 30 calendar days following the latter of (1) the Effective Date of this Agreement or (2) the date the Court issues an order approving this Settlement and the time to appeal that order has lapsed, better will provide Plaintiff with a settlement payment in the total amount of Twenty Four Thousand Dollars ($24,000.00) (the "Settlement Payment") as follows:

        i. as compensation for alleged unpaid wages, the gross sum of Seven Thousand Dollars ($7,000.00), less applicable payroll/tax withholdings, made payable to "Rosalie Sheehan-Veal," said amount to be reported by Better on an IRS Form W-2 to Plaintiff;

        ii. as compensation for alleged liquidated damages, penalties and interest, the gross sum of Seven Thousand Dollars ($7,000.00), made payable to "Rosalie Sheehan-Veal," said amount to be reported by Better on an IRS Form 1099-MISC to Plaintiff; and

        iii. as compensation for alleged attorneys' fees and costs, including, but not limited to, reimbursement for the cost of the Lawsuit, the sum of Ten Thousand Dollars ($10,000.00), made payable to "Wenzel Fenton Cabassa, P.A.," said amount to be reported by Better on IRS Form 1099-MISC to Plaintiff and her counsel. The Parties agree that Plaintiff's attorneys' fees and costs were agreed upon separately and without regard to the amount paid to the Plaintiff.

    b. Plaintiff acknowledges and agrees that the Settlement Payment represents a payment and benefit that she would not otherwise be entitled to receive without entering into this Agreement and constitutes full and agreed consideration of the releases, promises and other terms and conditions of this Agreement.

3. **Releases and Waivers**:

    a. <u>Release by Plaintiff</u>. Except for those obligations created by or arising out of this Agreement, Plaintiff, on her own behalf and on behalf of her descendants, dependents, marital community, heirs, executors, administrators, assigns and successors, and each of them, does hereby covenant never to sue and acknowledges complete satisfaction of and hereby fully and forever releases, absolves an discharges Better and any of its past, present, or future units, component entities, owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, direct or indirect parent companies, direct or indirect affiliate companies, divisions, direct or indirect subsidiaries (whether or not wholly owned), policyholders, benefit plans, including profit sharing, pension, health, savings, and any other employee benefit plans of any nature, the plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including but not limited to any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Releasees") with respect to and from any and all claims, demands, rights, liens, agreements, contracts, covenants, actions, suits, charges, complaints, grievances, wages, employment benefits, obligations, debts, litigation, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which Plaintiff has or might have, known or unknown, suspected or unsuspected, matured or unmatured, fixed or contingent, apparent or concealed,

2

which Plaintiff now owns or holds or has at any time heretofore owned or held as against Releasees, or any of them (collectively "Claims"), including but not limited to: (i) any and all Claims arising out of or concerning Plaintiff's employment relationship with any of the Releasees and the termination of that employment; (ii) any and all Claims asserted or that could have been asserted in the Lawsuit; (iii) any and all Claims for discrimination, harassment, retaliation or any other violation or Claim arising under any local, state or federal law, regulation, or ordinance (including, but not limited to, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment Retraining and Notification Act, the Employee Retirement Income Security Act, the Occupational Safety and Health Act, the False Claims Act, the Florida Civil Rights Act, the Florida Minimum Wage Act, the Florida Whistleblower Act, Florida's general labor laws (Fla. Stat. §§ 448.01 to 448.09), and retaliation provisions under the Florida Workers' Compensation Act); (iv) any and all Claims for wrongful termination, failure to engage in the interactive process, failure to provide accommodations, breach of express and/or implied-in-fact contract, breach of the covenant of good faith and fair dealing, unpaid wages, violation of public policy, intentional and/or negligent infliction of emotional distress, defamation, invasion of privacy, fraud and/or negligent misrepresentation, negligent supervision and/or retention, intentional and/or negligent interference with contractual relations and/or prospective economic advantage, and other common law torts; (v) any and all Claims for severance pay or benefits, bonus, commission and/or incentive pay, equity compensation, retention bonus, sick leave, sick pay, holiday pay, vacation pay, life insurance, health and medical insurance or any other fringe benefit, or disability; (vi) any and all Claims for penalties, attorneys' fees or costs; and/or (vii) any and all Claims arising out of any other transactions, occurrences, acts, or omissions or any loss, damage or injury whatsoever, known or unknown, suspected or unsuspected, resulting from any act or omission by or on the part of Releasees, or any of them, committed or omitted on or prior to the date of this Agreement. Nothing in the foregoing release is intended to relieve Releasees of any claim that may not be released as a matter of applicable law.

    b. <u>Waiver of Unknown Claims</u>.  It is a condition of this Agreement and is the intention of Plaintiff in executing this Agreement that the general release in Section 3.a. be extended to each and every Claim, demand and cause of action hereinabove specified, including but not limited to claims that are unknown or unsuspected by Plaintiff.  In so doing, Plaintiff expressly acknowledges that she is knowingly waiving rights that she may have under any applicable state, federal or local law that restricts the right of a person to waive unknown or unsuspected claims, including but not limited to California Civil Code section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

  Plaintiff acknowledges that she may later discover claims or facts in addition to or different from those which Plaintiff now knows or believes to exist with respect to the subject

matter of this Agreement and which, if known or suspected at the time of executing this Agreement, may have materially affected this Settlement. Nevertheless, Plaintiff hereby waives any right, claim, or cause of action that might arise as a result of such different or additional claims or facts.

4. **Approval of Settlement**: As a condition of this Agreement, the Parties will jointly file with the Court a motion for approval of the Settlement (the "Motion"). If there is a hearing on the Motion, the Parties will jointly appear, supporting the granting of the Motion. Should the Court decline to approve all material aspects of the Settlement (including but not limited to the scope of the release granted by Plaintiff), or order material changes to the Settlement to which the Parties do not agree, the Parties will work together in good faith to address any concerns raised by the Court and propose a revised Settlement for the Court's approval.

5. **Denial of Liability**: While this Agreement resolves all issues that Plaintiff may have with Better, as well as any future effects of any acts or omissions, it does not constitute an admission by Better of any violation of any federal, state or local law, ordinance or regulation or of any violation of Better's policies or procedures or of any liability or wrongdoing whatsoever. Neither this Agreement nor anything in this Agreement will be construed to be, or will be admissible in any proceeding as, evidence of liability or wrongdoing by Better. This Agreement may be introduced, however, in any proceeding to enforce the Agreement.

6. **Warranty Regarding Non-Assignment**: Plaintiff warrants and represents that she has not assigned or transferred to any person not a party to or intended beneficiary of this Agreement any released matter or any part or portion thereof, and that she will defend, indemnify and hold harmless Better (and all other Releasees) from and against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation is commenced) based on or in connection with or arising out of any such assignment or transfer made, purported or claimed.

7. **Acknowledgment of Wage Payments and Expenses**: Plaintiff warrants, represents, and agrees that (a) this Agreement resolves any and all disputes between the Parties regarding any wages and/or other compensation that Plaintiff allegedly earned or was entitled to receive during her employment with Better or any of the Releasees; (b) Plaintiff has been paid all wages, salary, bonuses, incentive compensation and any other benefits and compensation earned by Plaintiff during her employment with Better and any other Releasees; (c) other than the Settlement Payment, Plaintiff will not be entitled to any further wages, salary, bonuses, incentive compensation or any other benefits and compensation; and (d) Plaintiff has been fully reimbursed for all legitimate business expenses that she incurred during her relationship with Better and any of the Releasees.

8. **Warranty Regarding Taxes**: Plaintiff agrees that she will be exclusively liable for the payment of all federal and state taxes which may be due as the result of the consideration received from the settlement of disputed claims as set forth in this Agreement, and Plaintiff hereby represents that she will make payments on such taxes at the time and in the amount required of her. In addition, Plaintiff hereby agrees fully to defend, indemnify and hold harmless Releasees, and each of them, from payment of taxes, withholdings, interest and/or penalties that are required of them by any government agency at any time as the result of payment of the consideration set

forth in this Agreement. Plaintiff represents that she has not relied upon any advice from Better and/or its attorneys as to the necessity for withholding or the taxability of such payment, whether pursuant to federal, state or local income tax statutes or otherwise.

9. **Warranty Of No Other Actions Pending**: Plaintiff warrants and represents that, other than the Lawsuit, which, pursuant to Section 4, will be dismissed with prejudice following approval of the Settlement, no charge, complaint, action, application, petition, or grievance brought by Plaintiff or on her behalf regarding any of the matters released in this Agreement is currently open or presently exists against Better and/or any other Releasee in any forum or form. In addition, Plaintiff promises to opt out of any class or action that she is aware of and to take such other steps as she has the power to take to disassociate herself from any class or action seeking relief against Better and/or any other Releasee regarding any of the matters released in this Agreement.

10. **Nondisparagement**: Plaintiff agrees that she will not make any disparaging remarks, or any remarks that could reasonably be construed as disparaging, whether orally or in writing, regarding Better and/or any other Releasee, in any manner that is intended to be harmful to them or their business, business reputation or personal reputation, including but not limited to statements to the media, former and present employees, consultants or customers of Better. Nothing in this Section is intended to prohibit Plaintiff from testifying or responding truthfully in response to any court order, arbitral order, subpoena or government investigation, provided that Plaintiff: (i) provides written notice to Better within 72 hours of receiving any such order, subpoena or request for information from any governmental agency; and (ii) cooperates with Better to the extent it elects to object to such order, subpoena, or governmental investigation.

11. **Integration Clause**: This Agreement constitutes and contains the entire agreement and final understanding concerning the subject matters addressed in this Agreement. It is intended by the Parties as a complete and exclusive statement of the terms of their agreement. It supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matters addressed in this Agreement. Any representation, promise or agreement not specifically included in this Agreement will not be binding upon or enforceable against either Party. This is a fully integrated agreement.

12. **Severability**: If any term or provision of this Agreement or the application thereof is held to be invalid or unenforceable, the invalidity or unenforceability will not affect any other terms or provisions or applications of this Agreement which can be given effect without the invalid terms or provisions or application, and to this end the terms and provisions of this Agreement are declared to be severable. In other words, if any term or provision of this Agreement is held to be invalid or unenforceable, then the remaining terms and provisions of this Agreement will continue to be valid and will be performed, construed, and enforced to the fullest extent permitted by law.

13. **No Attorneys' Fees or Costs**: The Parties acknowledge and agree that, except as expressly provided herein, each Party will bear their own costs and attorneys' fees of all kinds, including those incurred in connection with the Lawsuit or the preparation of this Agreement or its enforcement.

14. **Governing Law**: This Agreement will be deemed to have been executed and delivered within the State of Florida, and the rights and obligations of the Parties under this Agreement will be construed and enforced in accordance with, and governed by, the laws of the State of Florida without regard to principles of conflict of laws.

15. **Non-Waiver**: No waiver of any breach of any term or provision of this Agreement will be construed to be, or will be, a waiver of any other breach of this Agreement. No waiver will be binding unless in writing and signed by the Party waiving the breach.

16. **Representation**: In entering into this Agreement, the Parties warrant and represent that they have completely read and fully understand the terms and consequences of this Agreement, that they have been given the opportunity to consult with legal counsel of their own choosing regarding this Agreement. Accordingly, the Parties each warrant and represent that the terms of this Agreement are fully understood and freely and voluntarily accepted by them.

17. **Cooperation**: Each Party has cooperated in the drafting of this Agreement. Hence, in any construction to be made of this Agreement, the same will not be construed against any Party on the basis that the Party was the drafter. Additionally, the Parties agree to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force to the basic terms and intent of this Agreement and which are not inconsistent with its terms.

18. **Counterparts**: This Agreement may be executed in counterparts, and each counterpart, when executed, will have the same effect as a signed original. Photographic copies of such signed counterparts may be used in lieu of the originals for any purpose.

**(ALL SIGNATURES ON PAGE 8)**

I HAVE READ THE FOREGOING AGREEMENT AND I ACCEPT AND AGREE TO THE PROVISIONS IT CONTAINS AND HEREBY EXECUTE IT VOLUNTARILY WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

Dated: Feb 24, 2023        ROSALIE SHEEHAN-VEAL

*/s/ Rosalie Sheehan-Veal*

Dated: February 28, 2023        BETTER MORTGAGE CORPORATION

*/s/ Levy Leatherman*

Levy Leatherman
Assistant General Counsel, Employee Relations

7